Todd Kim
Assistant Attorney General
Danica Anderson Glaser
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
DC Bar No. 1005853
danica.glaser@usdoj.gov
202-514-5270

*Attorneys for Plaintiff United States of America*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Denali Water Solutions, LLC,<br><br>Defendant. | No. 2:24-cv-03084-DWL<br><br>MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO ENTER CONSENT DECREE |

In this action, the United States brought claims against Defendant Denali Water Solutions, LLC ("Denali"), for alleged violations of the Clean Water Act ("Act") during its application of sewage sludge to farms in Arizona and California. *See* Complaint, ECF No. 1. The parties have reached a fair settlement that this Court should approve for the reasons that follow.

The United States lodged the proposed Consent Decree ("Decree"), which comprises the settlement, on November 7, 2024. ECF No. 3-1. The United States published notice of lodging of the Decree in the Federal Register and invited public comment on the Decree for a period of thirty days following publication of that notice. *See* 89 Fed. Reg. 90,053 (Nov. 14, 2024); *see also* 28 C.F.R. § 50.7, Decree ¶ 93. The public comment period has now closed, and the United States received no comments. Denali has consented to the entry of the Decree without further

notice. Decree ¶ 93. For the reasons detailed below, the United States believes the Decree is fair, reasonable, and consistent with the goals of the Act, and respectfully requests that the Court enter the Decree.

## BACKGROUND

**A.   Land Application of Sewage Sludge**

The Clean Water Act is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a); Complaint ¶ 10. To accomplish this goal, Section 405 of the Act prohibits disposal of sewage sludge except in compliance with regulations established by the U.S. Environmental Protection Agency ("EPA"). 33 U.S.C. § 1345. *Id.* ¶ 12. Sewage sludge – also known as "biosolids" – is a waste product from wastewater treatment plants that contains high levels of nitrate. Nitrate is a significant water pollution concern. *Id.* ¶ 11. However, the high nitrogen in sewage sludge also makes it a valuable form of fertilizer for agricultural crops, so "land application" of sewage sludge is an accepted form of disposal. *Id.* ¶ 14.

As a land applier, Denali is subject to EPA's regulations governing land application of sewage sludge, found in Subpart B of 40 C.F.R. Part 503 ("Part 503"). *Id.* ¶¶ 15, 44, 50, 54. Among many other regulations, Subpart B contains two important requirements at issue here:

- Under 40 C.F.R. § 503.14(d), land appliers must apply sewage sludge at an application rate that is equal to or less than the "agronomic rate." The agronomic rate is a maximum application rate that is designed both to "(1) provide the amount of nitrogen needed by the [crop or vegetation] grown on the land" and to "(2) minimize the amount of nitrogen in the sewage sludge that passes below the root zone … to the ground water." *Id*. § 503.11(b).
- Under 40 C.F.R. § 503.12(e)(1), land appliers must "obtain information needed to comply with the requirements" in Subpart B of Part 503. This necessarily includes a duty to obtain the information needed to comply with § 503.14(d), *i.e.*, the information needed to ensure land applications do not exceed the agronomic rate.

Complaint ¶ 16. The agronomic rate calculation is critical to ensuring that land application of

sewage sludge does not cause water pollution. Limiting application to the agronomic rate prevents nitrogen from being applied beyond the level the crop or vegetation can utilize. Overapplication can cause excess nitrogen to migrate downward, beyond where plants can use it, and eventually impact the underlying groundwater aquifer. *Id.* ¶ 17.

### B.   Denali's Land Application Program

Denali is a nationwide waste-management company whose business includes management of sewage sludge for municipalities nationwide. Municipal treatment plants pay land-application businesses such as Denali to collect their sewage sludge, and those businesses then make agreements with farmers to land-apply the sewage sludge to their fields. *Id.* ¶¶ 9, 26-28. Until 2024, Denali had contracts with treatment plants in California to haul their sewage sludge to farms in Maricopa, Pinal, and Yuma Counties in Arizona, and Madera, Merced, and Riverside Counties in California. *Id.* ¶ 29. In August 2024, Denali sold the assets and transferred or assigned the contracts for its land application business in Arizona and California, and is no longer land-applying sewage sludge in those states. *Id.* ¶ 9.

Beginning in 2018, the Arizona Department of Environmental Quality ("ADEQ") received a complaint that Denali was misapplying sewage sludge at Desert Ridge Farms in Yuma County, Arizona. *Id.* ¶ 33. ADEQ enforces Arizona's state-level sewage sludge program, which operates in parallel with the Part 503 regulations. *Id.* ¶ 25. ADEQ investigated and issued Denali two Notices of Violation and then referred the case to EPA. EPA investigated, requested records, and concluded that Denali's calculation methods were inaccurate, relied on insufficient information, and had led to dozens of incidents of overapplication, including applying sludge to fallow (empty) fields. *Id.* ¶¶ 34-41. Soil sampling at Desert Ridge confirmed elevated levels of nitrogen at soil depths below the root zone, indicating that excess nitrogen had been applied to the soil and was traveling toward groundwater. *Id.* ¶ 42.

In the Complaint, the United States alleges that Denali applied at least 26,104 tons of sewage sludge to fallow fields at Desert Ridge (a *per se* overapplication, since the nitrogen demand of an empty field is zero). *Id.* ¶¶ 45-47. The Complaint also alleges that on numerous other occasions Denali applied sewage sludge to planted fields at Desert Ridge and at other

farms, in excess of the agronomic rate needed by the crops being grown. *Id.* ¶ 51. Finally, the Complaint alleges that Denali failed to obtain or use "reasonably site-specific information" to calculate the agronomic rate, *id.* ¶¶ 40-41, and that as a result, Denali could not ensure that its land application on any given field would be below the agronomic rate for that field. *Id.* ¶ 55.

       **C.**    **The Proposed Decree**

The core of the proposed Decree's injunctive relief is a requirement that if Denali restarts applying sewage sludge in Arizona or California, it must comply with a Soil Sampling and Agronomic Rate Calculation Protocol ("Protocol"). Decree ¶ 11 & Appx. A. The Protocol is a detailed technical appendix that sets out a step-by-step process for Denali to calculate the amount of sewage sludge that can be applied to a field without exceeding the agronomic rate. The Protocol includes a calculation worksheet and directs what inputs Denali must include and how Denali calculates each input. *See* Decree, Appx. A. Those requirements directly address Denali's alleged past failures in information-gathering. Where possible, Denali must use actual information obtained from the farmer; in lieu of such information, Denali must use values that EPA has determined are reasonable, conservative, and geographically appropriate.

If Denali does restart land application of sewage sludge in Arizona and California, Denali will report to EPA that it is doing so and provide details on where it will be land-applying and who will be responsible for its compliance with the Protocol. Decree ¶ 15. Thereafter, Denali will have to submit to EPA an annual report (*id.* ¶ 16), and it must hire a third-party verifier to conduct an annual audit of its Protocol compliance and produce a report to EPA (*id.* ¶¶ 36-37, 41). Any overapplication is subject to stipulated penalties that escalate with the degree of exceedance (*id.* ¶ 44) as well as stipulated penalties for other noncompliance with the Protocol, reporting, or audit requirements (*id.* ¶ 45-47).

In addition to these compliance requirements, under the proposed Decree Denali will pay a civil penalty of $610,000, with interest, to the United States. *Id.* ¶ 7.

## STANDARD OF REVIEW

A district court reviewing a proposed consent decree must ensure the settlement is "fair, reasonable, and consistent with the objectives" of the statute at issue. *United States v. Montrose*

4

*Chem. Corp. of California*, 50 F.3d 741, 743 (9th Cir. 1995); *see also State of Arizona v. Ashton Co., Inc.*, No. CIV 10- 634-TUC-CKJ, 2016 WL 3745979, at *1 (D. Ariz. July 13, 2016) (citation omitted). Courts also articulate the standard as whether the settlement is "fundamentally fair, adequate, and reasonable" and "conform[s] to applicable laws." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).

      Several principles guide the Court's analysis of the proposed Consent Decree in this matter. First, "[i]t is well recognized that settlement agreements are judicially favored as a matter of sound public policy." *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979). This presumption in favor of settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (citation omitted); *see also SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (noting that a court "should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment").

      In addition to deferring to agency expertise, courts reviewing consent decrees should be sensitive to the "resources consumed by the federal agencies in negotiating these decrees, as well as the chance justly to finalize a matter that otherwise would burden agencies and courts. . ." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 851 (5th Cir. 1975); *see also Speed Shore Corp.*, 605 F.2d at 473 ("Settlement agreements conserve judicial time and limit expensive litigation." (citation omitted)). Finally, in reviewing a consent decree involving federal agencies, a district court "must refrain from second-guessing the Executive Branch." *Montrose Chem. Corp.*, 50 F.3d at 746 (citation omitted). In conducting its review, the trial court may not modify the terms of the parties' agreement – it may only approve or reject the settlement as a whole. *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982).

## **ARGUMENT**

      The proposed Decree satisfies the three-part test for district court approval of a settlement: the Decree is fair, reasonable, and consistent with the goals of the Act.

### A. The Decree is Procedurally and Substantively Fair

First, the Court must determine that the proposed decree is both procedurally and substantively fair. *Montrose Chem. Corp.*, 50 F.3d at 746; *United States. v. Coeur d'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014). To determine procedural fairness, "the court must look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *State of Ariz. ex rel. Woods v. Nucor Corp.*, 825 F. Supp. 1452, 1456 (D. Ariz. 1992), *aff'd sub nom. State of Ariz. v. Components Inc.*, 66 F.3d 213 (9th Cir. 1995) (internal quotations omitted); *see also Oregon*, 913 F.2d at 581 ("once the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid").

The negotiations in this matter were procedurally fair. The United States was represented by legal and technical experts from EPA and counsel from the Department of Justice's Environmental Enforcement Section. Denali was represented by experienced outside counsel, and its own technical and managerial staff, who had expertise in Denali's practices and in the relevant regulatory regime at issue in the negotiations. The parties met regularly for more than a year and a half to reach agreement on the terms of the settlement as embodied in the Decree. The proposed settlement, therefore, reflects the parties' arm's-length efforts to reach an informed, equitable outcome and is not the product of collusion nor a consequence of one-sided bargaining power.

As required, the Department of Justice published notice of the Consent Decree in the Federal Register. *See* 28 C.F.R. § 50.7; 89 Fed. Reg. 90,053 (Nov. 14, 2024). The United States received no comments. This solicitation of public comments also indicates the Decree is procedurally fair. *See Akzo Coatings*, 949 F.2d 1409, 1435 (6th Cir. 1991).

The second prong of the fairness analysis focuses on whether the proposed settlement is substantively fair. "Substantive fairness concerns the issues of corrective justice and accountability." *Berendo Prop. v. Closed Loop Ref. & Recovery Inc.*, No. CV-22-01721-PHX-SMM, 2023 WL 1331276, at *2 (D. Ariz. Jan. 31, 2023) (citing *Nucor*, 825 F. Supp. at 1458) (internal quotations omitted). Here, Denali has accounted for its alleged past violations by agreeing to pay a substantial civil penalty. And it has committed to undertake extensive

6

injunctive relief measures if it land-applies in Arizona or California in the future, which will provide a corrective counterbalance to its past noncompliance.

In determining whether a Consent Decree is substantively fair, courts also consider the strength of the plaintiff's case and the risks posed by litigation. *Akzo Coatings*, 949 F.2d at 1435; *Arizona v. City of Tucson*, 761 F.3d 1005, 1012 (9th Cir. 2014). The proposed Decree is substantively fair because it achieves effective relief without exposing the United States to the costs, risks, and burdens of further protracted litigation. The Decree secures an appropriately deterrent penalty and expedites injunctive relief to prevent future violations, in lieu of spending years and substantial resources litigating the issues with no prospect of achieving a more effective remedy. In this respect, the Decree is substantively fair. *See United States v. BP Expl. & Oil Co.*, 167 F. Supp. 2d 1045, 1054 (N.D. Ind. 2001) (a consent decree that settles an environmental enforcement action may reflect a completely appropriate strategic election by the government to negotiate for "extensive relief without the burden of proving its case").

**B.    The Decree is Reasonable**

The reasonableness and adequacy of a proposed settlement is linked to substantive fairness. Courts commonly find that a decree is adequate and reasonable if it includes a comprehensive injunctive program to protect the environment and bring the defendant into compliance with the law. *See, e.g.*, *United States. v. Salt River Project Agr. Improvement and Power Dist.*, No. 08-1479-PHX-JAT, 2008 WL 5332023, at *3 (D. Ariz. Dec. 22, 2008). Further, in assessing the reasonableness of a proposed settlement, a "decree's likely efficaciousness as a vehicle for cleansing the environment is of cardinal importance." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 89 (1st Cir. 1990).

As described above, Denali currently is not conducting land application in Arizona and California and has no present plans to do so again. But to guard against the possibility of issues if such land application does occur in the future, the proposed Decree imposes a series of requirements that will go into effect if Denali re-enters that business in Arizona or California during the term of the Decree. This anticipatory injunctive relief framework is protective of the environment and the United States' interests, while recognizing the current status of Denali's

7

business operations. For these reasons, the proposed Consent Decree is both adequate and reasonable.

### C.     The Decree is Consistent with Applicable Law

Finally, a court tasked with reviewing a proposed consent decree must assess whether the settlement furthers the goals of the statute alleged to have been violated and is in the public interest. *Montrose Chem. Corp.*, 50 F.3d at 747-48. Since a district court's "authority to adopt a consent decree comes only from the statute which the decree is intended to enforce," *E.E.O.C. v. Cannon & Wendt Elec. Co., Inc.*, No. CIV 07-1710-PHX-EHC, 2010 WL 3998042, at *3 (D. Ariz. Oct. 12, 2010), the "focus of the court's inquiry" should be on "the Act itself" and the purposes it is intended to serve. *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).

The stated purpose of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The proposed Decree furthers this goal by requiring Denali, if it restarts land application in Arizona and California, to implement measures that will prevent excess nitrogen applications, identify them when they do occur, and mitigate any consequences to the environment. This will benefit the environment, as the Act intended. *Id.* And the substantial penalty Denali will pay under the Decree will deter other prospective violators, by showing that noncompliance can be costly and will likely be detected and addressed. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *United States v. Cinergy Corp.*, 397 F. Supp. 2d 1025, 1032 (S.D. Ind. 2005). In this respect, the proposed Decree will reduce the likelihood of other violations of the Act's sewage sludge regulations and the adverse environmental and health impacts that they could otherwise cause.

The settlement further serves the public interest by avoiding litigation, which would otherwise consume "a significant amount of time and expense by the parties, including the public fisc," and require "a substantial redirection of judicial resources." *United States. v. E.I. Du Pont De Nemours and Co.*, No. 2:14-25143, 2015 WL 5684154, at *5 (S.D.W. Va. Sept. 25, 2015); *see also Speed Shore Corp.*, 605 F.2d at 473 ("Settlement agreements conserve judicial time and

limit expensive litigation."). Rather than litigating this case through trial, the United States can direct its resources to enforcing environmental requirements involving other violators.

## CONCLUSION

For the reasons set forth above, the Decree is fair, reasonable, and in the public interest. The United States respectfully requests that this Court approve the proposed Decree as a final judgment in this action pursuant to Fed. R. Civ. P. 54 & 58, by signing the attached proposed order. The Court may also wish to sign the Decree on page 28, and then enter the final signed Decree, including the appendix, into the docket for this case. Pursuant to Paragraph 93 of the Decree, Denali has already consented to entry of the Decree.

Dated: January 3, 2025

UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ *Danica Anderson Glaser*
DANICA ANDERSON GLASER (DC Bar #1005853)
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-5270
Email: danica.glaser@usdoj.gov

GARY M. RESTAINO
United States Attorney
District of Arizona

OF COUNSEL:
Kasey Barton
Senior Attorney, Office of Regional Counsel
U.S. Environmental Protection Agency, Region 7
11201 Renner Boulevard
Lenexa, KS 66219