**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Denali Water Solutions LLC,<br><br>Defendant. | No. CV-24-03084-PHX-DWL<br><br>**ORDER** |

The United States initiated this action on November 7, 2024, by filing a complaint against Denali Water Solutions LLC ("Defendant"). (Doc. 1.) The complaint alleges that, between January 2016 and August 2024, Defendant violated certain federal laws and regulations governing the management and land application of sewage sludge. (*Id*.) The only specific remedies sought in the complaint are (1) an award of civil penalties and (2) an award of costs. (*Id.* at 10.)

As it turns out, the filing of the complaint did not mark the beginning of a live dispute between the United States and Defendant. At the same time it filed the complaint, the United States filed a lengthy proposed consent decree it had already negotiated with Defendant: "[T]his Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties . . . ." (Doc. 3-1 at 3.) The proposed consent decree calls for Defendant to make a one-time civil penalty payment of $610,000 to the United States. (*Id.* ¶ 7.) The proposed consent decree also calls for Defendant to follow certain "Compliance Requirements" and "Reporting Requirements" and, potentially, to

1  hire a "Third-Party Auditor" to verify Defendant's compliance. (*Id.* ¶¶ 11-41.)

2  The only other litigation activity in this case, other than the filing of the complaint
3  and proposed consent decree on November 7, 2024, occurred on January 3, 2025, when the
4  United States filed an unopposed motion for approval of the consent decree. (Doc. 4.) The
5  motion notes that "[i]n accordance with 28 C.F.R. § 50.7, the United States published
6  notice of the proposed Decree in the Federal Register on November 14, 2024, for a thirty-
7  day public comment period. The United States received no comments." (*Id.* ¶ 1, citation
8  omitted.)

9  If the Court were writing on a blank slate, it would have serious questions about
10 whether this action ever presented the sort of "case or controversy" necessary to create
11 subject-matter jurisdiction. Essentially, the parties arrived together in court with a pre-
12 negotiated settlement agreement, with the sole shared objective of obtaining judicial
13 approval over that agreement. Other courts have raised thoughtful questions about the
14 constitutional permissibility of this practice. *Lexington Ins. Co. v. Ambassador Group*
15 *LLC*, 581 F. Supp. 3d 863, 865-66 (W.D. Ky. 2021) ("A consent decree is a strange hybrid
16 in the law . . . [that] enjoys a privileged . . . position among the ranks of permissible judicial
17 remedies. Certainly the law of this circuit tolerates, and even favors, their use in order to
18 speed the resolution of the cases and controversies on federal dockets . . . [b]ut once the
19 parties reach agreement, would the underlying disputes even qualify as 'Cases' and
20 'Controversies' as used by the framers of Article III? And could justice proceed just as
21 swiftly based on private settlement agreements alone? These are important constitutional
22 questions whose answers are not obvious.") (citations omitted).

23 But the Court does not write on a blank slate. The Ninth Circuit has suggested that
24 a district court has subject-matter jurisdiction over a request to approve a proposed consent
25 decree even if "the parties arrived in court with the proposed judgment in hand." *SEC v.*
26 *Randolph*, 736 F.2d 525, 528 (9th Cir. 1984). The Court is bound to follow *Randolph*.
27 *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) ("District courts are bound
28 by the law of their own circuit . . . no matter how egregiously in error they may feel their

1   own circuit to be.").

2   On the merits, Ninth Circuit law holds that a proposed consent decree "ought to be approved" unless it "is unfair, inadequate, or unreasonable." *Randolph*, 736 F.2d at 529. Additionally, courts must "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." *Id. See also United States v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990) ("Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable. In addition, because it is a form of judgment, a consent decree must conform to applicable laws.") (citations omitted).

The Court will confess that, because it has had exactly zero involvement overseeing any contested litigation in this case, it is difficult to evaluate whether the proposed consent decree is unfair, inadequate, or unreasonable. For example, the government states that "[i]n determining whether a Consent Decree is substantively fair, courts also consider the strength of the plaintiff's case and the risks posed by litigation." (Doc. 4-1 at 7.) But it is challenging, to put it mildly, for a court to evaluate the strength of the plaintiff's case when there has never been any evidentiary or adversarial presentation. At any rate, in light of the highly deferential standards set forth in *Randolph* and *State of Oregon*, and because nothing on the face of the proposed consent decree seems out of the ordinary, the Court concludes that the standard for approval has been satisfied. *Cf. Lexington Ins. Co.*, 581 F. Supp. 3d at 870 ("Despite the uneasy relationship between consent decrees and federal courts' limited Article III jurisdiction, the law of this circuit . . . authorize[s] and—on this Court's reading, at least—effectively compel[s] approval of the parties' proposed resolution, which satisfies the requirements articulated in this Circuit's precedents.").

…

…

…

…

…

1    Accordingly,

2    **IT IS ORDERED** that the United States' unopposed motion to approve consent decree (Doc. 4) is **granted**. The Court hereby enters the consent decree (Doc. 3-1) as an order of the Court. The Clerk of Court shall terminate this action.

Dated this 10th day of January, 2025.

_____
Dominic W. Lanza
United States District Judge